{¶ 45} I respectfully dissent.
 {¶ 46} Rarely do we, as a court, have a case where the manifest weight of the evidence is in serious debate. This case is the exception.
 {¶ 47} A.M. was in trouble with her mother and step-father. She had taken the family car without permission and had damaged it. She had also abused her cell phone privileges and run up the bill on it. She decided she wanted to live with her natural father and hoped to break up the marriage between her mother and Jerry Stewart. She told her sister that she was willing to lie to make it happen. She then began claiming her stepfather had raped her repeatedly.
 {¶ 48} A physical examination revealed no sign of abuse, sexual or otherwise. Although A.M. claimed repeated sexual intercourse, she did not know that her step-father had never been circumcised and drew a picture of a circumcised penis when asked to describe Jerry's male organ.
 {¶ 49} Neither A.M.'s mother nor her sister believed A.M.'s claims. Both testified at trial that, given the creaky conditions in their house, and especially in the bedroom A.M. shared with her sister, the sexual activity A.M. claimed was simply not possible. *Page 17 
 {¶ 50} The prosecution submitted two pieces of "evidence" to bolster A.M.'s shaky testimony. A lab report showed a semen stain with some of A.M.'s epithelial cells in or on it. A.M.'s mother explained that the futon mattress on which the stain was found had been a place where she and her husband had had sexual relations before the futon had become A.M.'s bed. In short, the semen arrived on the mattress before the skin cells arrived, according to A.M.'s mother's testimony.
 {¶ 51} The second attempt to bolster A.M.'s credibility was the submission of a family photograph in which Jerry Stewart is standing behind A.M. with his head angled downward and to his left. A.M. is wearing a formal dress with a V neck which is both tight-fitting and revealing at the same time. Jerry Stewart's eyes are not visible. The state of Ohio argued that the photo showed Jerry looking at A.M.'s cleavage and therefore was evidence of Jerry having a sexual interest in A.M. The state argued further that the photograph was relevant in deciding if Jerry had engaged in sexual activity with A.M. The photograph was initially used in cross-examination of A.M.'s mother, who had testified that Jerry had never displayed a sexual interest in A.M. during the years the mother and Jerry had been together.
 {¶ 52} Under the circumstances, I would sustain both assignments of error. In the photograph, state's exhibit No. 4, one cannot determine if Jerry's eyes are even open, let alone if they are looking at some part of A.M. The relevance of a man looking downward and to the left when he is standing next to a teenage girl is evidence of nothing, especially if his eyes are not even open. Using such a photograph to somehow prove that a man sexually abused a teenager, to me, is utterly impermissible.
 {¶ 53} Evid. R. 401 reads:
 "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the *Page 18 
determination of the action more probable or less probable than it would be without the evidence.
 {¶ 54} Under this definition, I do not believe the photograph is relevant evidence. If the photograph is not relevant evidence, it is not admissible. See Evid. R. 402.
 {¶ 55} If some relevance can be hypothesized, then the photograph does meet the test of Evid. R. 403(A) which reads:
 Exclusion mandatory. Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.
 {¶ 56} In a case where the prosecution's evidence is so open to question, the erroneous admission of the photograph is extremely prejudicial.
 {¶ 57} Sitting as the thirteenth juror, as I am expected to do as a judge considering the manifest weight of the evidence, I cannot see the evidence here as establishing beyond a reasonable doubt that Jerry Stewart ever inappropriately touched A.M.
 {¶ 58} Again, I would sustain both assignments of error. Since the majority of this panel does not, I respectfully dissent. *Page 1